*J. P. Usher*, for the plaintiff.

---

## COOPER *v.* McJUNKIN.

Trespass. The first count in the declaration was in the usual form for an assault and battery. The second alleged that the defendant unlawfully, and with inhuman violence, beat, bruised, cut and gashed the face and head of the defendant, &c. Plea, that the several trespasses in the first and second counts mentioned (which were enumerated in the plea) were one and the same, &c.; that the relation of teacher and pupil subsisted between the parties; that at, &c., in school and during school hours, the plaintiff, as such pupil, was negligent, disorderly, &c., and that the defendant, as such teacher, finding it necessary for the good government of the school, did thereupon moderately correct the plaintiff, as he lawfully might, &c., averring that this moderate correction constituted the several acts of trespass in the declaration mentioned, and in the introductory part of the plea enumerated, &c. *Held,* that the plea was not a good answer to the second count, and the replication to it having been demurred to, that the plea was reached by the demurrer.

A bad replication is sufficient for a bad plea.

A teacher, in the exercise of the power of corporal punishment, must not make such power a pretext for cruelty and oppression; but the cause must be sufficient, the instrument suitable, and the manner and extent of the correction, the part of the person to which it is applied, and the temper in which it is inflicted, should be distinguished with the kindness, prudence, and propriety which become the station.

May Term, 1853.

COOPER
v.
McJUNKIN.

Wednesday, June 15.

ERROR to the *Allen* Circuit Court.

STUART, J.—*Cooper* sued *McJunkin* in trespass.

The first count is in the usual form for an assault and battery. The second count alleges that *McJunkin* unlawfully, and with inhuman violence, beat, bruised, cut and gashed the face and head of *Cooper*, &c.

The defendant filed several pleas, none of which are now before us, except the fourth plea.

In the introductory part that plea enumerates the several trespasses in the first and second counts, and avers that they are one and the same acts of trespass. The pleader then states that the relation of teacher and pupil subsisted; that at, &c., in school and during school hours, *Cooper*, as such pupil, was negligent, disorderly, &c.; that *McJunkin*, as such teacher, finding it necessary for the good government of the school, did thereupon moderately correct *Cooper*, as he lawfully might, for the cause aforesaid, averring that this moderate correction constitutes the several acts of trespass in the declaration mentioned, and in the introductory part of the plea enumerated, &c.

The replication, admitting the bad conduct of *Cooper*, is a species of *de injuria*, to which a demurrer was sustained, and judgment for the defendant. The replication is informal—perhaps bad; but it is good enough for a bad plea.

The law still tolerates corporal punishment in the school-room. The authorities are all that way, and the legislature has not thought proper to interfere. The public seem to cling to a despotism in the government of schools which has been discarded everywhere else. Whether such training be congenial to our institutions and favorable to the full development of the future man, is worthy of serious consideration, though not for us to discuss.

In one respect the tendency of the rod is so evidently evil, that it might, perhaps, be arrested on the ground of public policy. The practice has an inherent proneness to abuse. The very act of whipping engenders passion, and very generally leads to excess. Where one or two stripes only were at first intended, several usually follow, each increasing in vigor as the act of striking inflames the passions. This is a matter of daily observation and experience. Hence the spirit of the law is, and the leaning of the courts should be, to discountenance a practice which tends to excite human passions to heated and excessive action, ending in abuse and breaches of the peace. Such a system of petty tyranny cannot be watched too cautiously nor guarded too strictly. The tender age of the sufferers forbids that its slightest abuses should be tolerated. So long as the power to punish corporeally in school exists, it needs to be put under wholesome restriction. Teachers should, therefore, understand that whenever correction is administered in anger or insolence, or in any other manner than in moderation and kindness, accompanied with that affectionate moral suasion so eminently due from one placed by the law "*in loco parentis*"— *in the sacred relation of parent*—the Courts must consider them guilty of assault and battery, the more aggravated and wanton in proportion to the tender years and dependent position of the pupil.

Were it within the province of these discussions, how many other objections to the rod, based upon its injurious moral influence on both teacher and pupil, might be safely assumed.

One thing seems obvious. The very act of resorting to the rod demonstrates the incapacity of the teacher for one of the most important parts of his vocation, namely, school government. For such a teacher the nurseries of the republic are not the proper element. They are above him. His true position will readily suggest itself.

It can hardly be doubted but that public opinion will, in time, strike the ferule from the hands of the teacher, leaving him as the true basis of government, only the re-

sources of his intellect and heart.  Such is the only po-
licy worthy of the state, and of her otherwise enlightened
and liberal institutions.  It is the policy of progress.  The
husband can no longer moderately chastise his wife; nor,
according to the more recent authorities, the master his
servant or apprentice.  Even the degrading cruelties of
the naval service have been arrested.  Why the person
of the school-boy, " with his shining morning face," should
be less sacred in the eye of the law than that of the ap-
prentice or the sailor, is not easily explained.  It is re-
gretted that such are the authorities,—still courts are
bound by them.  All that can be done, without the aid of
legislation, is to hold every case strictly within the rule;
and if the correction be in anger, or in any other respect
immoderately or improperly administered, to hold the un-
worthy perpetrator guilty of assault and battery.

The plea before us avers that the several acts of tres-
pass alleged in both counts were one and the same act.
This mode of pleading, the effect of which is to deprive
the plaintiff of the benefit of several counts on the trial,
is, when taken in time, bad on general demurrer.  But,
by replying, the plaintiff has cured the defect and nar-
rowed his own position.  1 Chitty Pl. 414.—7 Blackf. 384.

The plea assumes to answer the whole declaration.
Moderate correction, supposing it an answer to the first
count, is not a sufficient answer to the matter alleged in
the second count.  7 Blackf. 74.—17 Ohio R. 454.  If the
inhuman beating, cutting, &c., alleged in the second
count did not take place, the defendant, as to that, should
have pleaded the general issue, and justified as to the
residue.  If he committed the alleged violence, he could
only justify by showing its necessity; for example, to
overcome resistance offered to the legitimate exercise of
his authority.  The plea before us does neither.

The acts of cruelty complained of in the second count
are, therefore, not embraced in the idea of moderate cor-
rection.  Admitting the right to chastise moderately, it
does not follow that a choleric schoolmaster will be jus-
tified in beating and cutting the head and face of a way-

May Term,
1853.

Cooper
v.
McJunkin.

ward boy with any weapons which his passions may supply. To call such acts of extreme violence moderate correction, does not change their character. It is not a denial of the allegations in the second count, nor does it confess and avoid them. Such pleading, professing to answer the whole declaration, is bad on demurrer; and was reached by the demurrer to the replication.

The law having elevated the teacher to the place of the parent, if he is still to sustain that sacred relation, "it becomes him to be careful in the exercise of his authority, and not make his power a pretext for cruelty and oppression." 14 Johns. R. 119. Whenever he undertakes to exercise it, the cause must be sufficient, the instrument suitable to the purpose; the manner and extent of the correction, the part of the person to which it is applied, the temper in which it is inflicted, all should be distinguished with the kindness, prudence, and propriety which become the station.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*H. Cooper*, for the plaintiff.

*J. W. Dawson* and *M. Jenkinson*, for the defendant.