Richard Drake, Minor, by Selika Drake, His Mother and Next Friend, Appellee, v. William Thomas, Appellant.

Gen. No. 41,361.

58

Opinion filed April 23, 1941.

Richard S. Folsom, of Chicago, for appellant; Ralph W. Condee, James W. Coffey and H. Meyer Simborg, all of Chicago, of counsel.

No appearance for appellee.

Mr. Presiding Justice Hebel delivered the opinion of the court.

This is an appeal from a judgment for $250 entered in a tort action for assault and battery brought by a public school pupil, Richard Drake, a boy 15 years of age, of the Moseley Correctional School, a school for truants, delinquents and incorrigibles, against a teacher of that school. The case was tried before the court without a jury and a judgment entered April 4, 1940, upon the court's finding that defendant, plaintiff's school teacher, was guilty as charged in the state-

ment of claim. Defendant's motions for a new trial and in arrest of judgment were overruled.

Plaintiff's statement of claim is as follows:

"1. Plaintiff, Richard Drake, a minor, by Selika Drake, his mother and next friend, complains of defendant, William Thomas, and says that:

"2. On to-wit, the 24th day of March, 1938, the defendant assaulted and beat the plaintiff, while plaintiff was intrusted to and in the care of defendant at and in one of the class rooms known as grade 8A of the Moseley School, located at 24th and Michigan Avenue, in the City of Chicago, County of Cook and State of Illinois, by striking the plaintiff many hard and severe blows upon the body, viz., the thighs of plaintiff, with a hard rod, pole or stick then and there kept by said defendant for such uses and purposes, and severely injuring and abusing the plaintiff.

"3. In consequence, the plaintiff was for a long time disabled, maimed, bruised and injured, and unable to go about his regular pursuits enjoyed by boys of like age, and the plaintiff incurred expenses for medical attention, and has, as a consequence of said assault and battery, become fearful and timid, and unable to fully exercise his mind and thoughts while under the supervision of said defendant.

"Wherefore, plaintiff claims damages in the amount of Five Hundred ($500.00) Dollars."

Defendant filed his affidavit of defense, admitting that he was a public school teacher in the Moseley School and that plaintiff, Richard Drake, was a pupil in his classroom. The defense denied the allegations as to the assault and battery; denied that the defendant struck the plaintiff many hard and severe blows on the body; denied that the defendant severely injured or abused the plaintiff; and denied that plaintiff suffered the injury and damages as alleged in his statement of claim.

The plaintiff was a pupil, and the defendant his teacher, at the Moseley School in the city of Chicago. The Moseley School is a specially created school for truants and incorrigibles, maintained by the board of education of the city of Chicago by virtue of the authority vested in said board of education by section 159 of chapter 122, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 123.178], wherein it is provided;

"The board of education shall exercise general supervision and management of the public education and the public school system of the city, and shall have power to make suitable provision for the establishment and maintenance throughout the year, or for such portion of the year as it may direct, not less than nine months in time, of schools of all grades and kinds, including normal schools, high schools, night schools, schools for defectives and delinquents, parental and truant schools, . . ." The Moseley School created under this statute is a specialized school to which students are sent who do not adjust themselves in the regular schools of the board of education, the student body consisting of truants, delinquents and boys who are unable to fit in the schools from which they are transferred. The pupils are all maladjusted and are sent to the Moseley School because of this fact.

Plaintiff entered the Moseley school on November 10, 1937, under a written transfer from the Betsy Ross School. While the trial court received this transfer slip in evidence, it excluded the notations thereon which showed that Drake was sent to the Moseley School because he had been reported to the truant officer for refusing to attend school and for being incorrigible during all of the school year. Moreover, his mother requested that he be sent to the Moseley School because of these facts. The plaintiff was assigned to home room 306, which room was in charge of the defendant who had been a teacher for many years

and in this particular school ever since its opening as a correctional school on September 5, 1930.

It appears that the home room teacher receives the boys in the morning when school opens. They remain with him for two periods of 45 minutes each, during which time a check is made by the home room teacher of those in attendance and of those absent. The absentees' names are put on what is known as a circulating room slip to be carried with the home room group to the classes it attends according to the class schedule. The teachers, into whose classes the group enters, in turn place on the slip the name, of any pupil who attempts to cut class, or misbehaves in any manner while he is away from his home room. This circulating slip is returned to the home room teacher in the afternoon so that he may know how his boys carried on during the day. It is the duty and responsibility of the home room teacher to take up with his group any infractions of the rules—the home room teacher being responsible for the action of his group as it moves throughout the school building. At 2:00 o'clock in the afternoon the boys return to the home room and work there with their home room teacher until 3:15, when the home room teacher accompanies them to the State street car line and dismisses them.

It further appears that on March 24, 1938, the plaintiff's home room group went to Miss Albina Breecher's room for art instruction. Miss Breecher is the art teacher at the school and has been teacher there for 10 years, having taught in the public school system for 27 years. Her desk in the art class was located in the rear of the room, and the plaintiff having been troublesome, she had placed him in a seat directly in front of her desk where she could keep an eye on him. When plaintiff's group came into the art class for instruction, it appears that Miss Breecher was forced to devote practically the entire first part of the

period of that day to attempting to get the plaintiff started on his work, during which time he was troublesome and noisy. After a time Miss Breecher left plaintiff by himself but observed his actions. She saw him suddenly reach around to a boy who was working in front of the boy that sat in front of plaintiff and flick that boy on the ear. The boy struck, thought that the boy immediately in back of him had hit him, which resulted in a loud argument between the boy struck and the one immediately behind him and which threatened to develop into a fight in the class room. Miss Breecher then told plaintiff that she just couldn't put up with him any longer and that he would have to go to the principal's office. Plaintiff returned to his home room instead of going to the office and was asked by the defendant why he was returning so early and what had happened. Plaintiff replied, "There has been a misunderstanding." The defendant then said, "Very well, we will see what happened," and escorted him back to the art class.

The art teacher reported to defendant that the plaintiff had created a disturbance in her room and was acting up again in an unruly manner and refused to do his work, and said, "He is so disturbing. I can't stand him in the room. I can't do any teaching." Plaintiff had been such a disturbance in the class theretofore, that Miss Breecher had discussed him with the principal and had been told by the principal that the next time he created a disturbance in her room he was to be sent to the principal's office. The defendant then took the plaintiff back to the home room and questioned him as to why he could not conform to the school's rules. He talked to the boy and asked him whether a little corporal punishment would help him to remember to behave, and with that the defendant picked up a little paper tube that was on his desk and struck the plaintiff several times rapping him across the thighs. At the time this took place the teacher

was seated at his desk and the pupil was seated to his right. After the punishment, the defendant said, "Now I hope this will be a reminder that you are supposed to try and carry on," and then sent the boy back to his art class. The plaintiff spent the remainder of that day in school and the official school attendance records show that he attended school the following day, March 25, 1938. On that day plaintiff's mother called the principal of the school and complained to him of defendant's action. The principal, Mr. Postel, then called the plaintiff to come down to the office, and asked him if he would show him the marks on his body that he complained had been inflicted by the defendant. The plaintiff pulled down his trousers and indicated to Mr. Postel where he claimed he had been hurt. The principal could not distinguish·any marks or bruises on the thighs.

The principal then called the defendant and informed him of Mrs. Drake's complaint, and suggested that he go out to see her as to what the trouble was, and that possibly a better understanding could be arrived at by calling at the home to talk the matter over with her and to try to make her understand what he was trying to do for the boy. The defendant and his wife did go out one evening to Mrs. Drake's home to discuss the matter and while there she said, "Why did you punish my son as you did?" To which the defendant replied, "I didn't do anything that I didn't think you would have done or your husband would have done, had you had one. The only thing I did was to try to get your son to realize that he has a responsibility to you and to his school and I hope that it is accepted from that point of view." Then Mrs. Drake said, "Well, you will have to suffer for it." Shortly thereafter suit was filed.

The first question that is called to our attention by the defendant is the rule that the authority of a teacher over a pupil is a delegation of parental author-

ity, and where the teacher inflicts corporal punishment on a pupil, and he is not actuated by malice and the punishment is not excessive or wanton, the teacher is not liable. In discussing a like question as we have here on appeal, the court in the case of *Fox v. People,* 84 Ill. App. 270, passed upon a criminal prosecution brought by a pupil against his school teacher, for assault and battery. The act complained of was the whipping of the pupil with a switch about the size of an ordinary lead pencil. There was a trial by jury resulting in a verdict of guilty and a judgment entered on the verdict. The judgment was reversed on appeal, the court, citing from *American and English Encyclopaedia of Law,* as follows, page 271;

" 'The authority of a teacher over his pupil being regarded as a delegation of at least a portion of the parental authority, the presumption is in favor of the correctness of the teacher's action in inflicting corporal punishment upon the pupil. The teacher must not have been actuated by malice, nor have inflicted the punishment wantonly. For an error in judgment, although the punishment is unnecessarily excessive, if it is not of a nature to cause lasting injury, and he acts in good faith, the teacher is not liable.' American and English Encyclopaedia of Law, Vol. 21, page 769."

The rule of the above citation, as called to our attention, is necessarily the rule for a teacher stands in *loco parentis.* This rule is applicable to the facts in this case, and more especially when we consider that Mrs. Drake requested the school authorities to take such action as was necessary to make her son behave and attend school. Her first letter to the principal, dated January 9, 1938, is as follows;

" Chicago, Illinois, Jan. 9, 1938.
"To the Principal—

"I am writing you concerning my boy Richard C. Drake 303 East 61 St. I work every day and I try all I can to get him to go to school but he goes when he

feels like it and when he does not want to do he just stays home without any excuse whatever he went away from home and staid 2 nights he wont obey me at all I have talked everything I know to say to him trying to get him to do the right thing and it just seems like it is not in him will you please try and see if he needs a mental examination for there must be something wrong my work is so confining I can't get to the School I talk to him and tell him if he does not do better he will be sent to the reform School he said they might take his dead body but not him I am really at my roads end please see if there is anything that can be done Mrs. Selika Drake mother 303 East 61 Street Apt 3.''

A further letter, dated February 3, 1938, was received by the principal, as follows;

''To the Principal—

''I am writing you again concerning Richard Drake 303 East 61 Street Apt 3 it just seems he has made up his mind he will go to School when he wants to and when he does not he does something else I leave home 7 oclock every morning going to work I wake him to get ready for School he will act like he is going until I leave then he will go back to bed and then when he does decide to go he is late and just to-day Thursday I came home from work early and he was still in bed asleep nothing at all wrong only pure laziness I will be willing for you to take what ever steps are necessary to make him come to School Thanking you in advance.

''Selika Drake mother''

These two letters were offered in evidence for the purpose of showing the nature of the boy's conduct, the inability of the mother to cope with him, and her express request and delegation of authority to his principal and teachers to take whatever steps might be necessary to make him come to school and to behave. These letters were refused in evidence; therefore, the court did not have before it this evidence of the

mother's requesting the principal and teachers to correct her son. The refusal to admit these letters in evidence was, in our opinion, erroneous. These letters delegated to the principal and teachers the authority to correct her boy, and was an express delegation of parental authority to the teachers to do what could be done to correct her boy.

When we consider the facts in this case it does not appear that the defendant's actions were actuated by malice, nor that the punishment was inflicted wantonly. As we have already indicated the punishment inflicted was not excessive. From the facts, there appears to have been no lasting injury, and that the teacher acted in good faith. From the facts as they appear in this record it is apparent that this boy (the plaintiff) was obstreperous and insubordinate. He was in a correctional school where boys of his character were transferred because he refused to attend and obey the rules of the Betsy Ross School, from which he was transferred. It is to be noted that the teachers in the Moseley School are experts with special training in handling delinquents. These teachers must maintain order in the classrooms or chaos would result. It should be noted that they are teaching not the average pupil, but rather are teaching the maladjusted, the truants, delinquents and incorrigibles. In this particular case, nothing appears to indicate that there was any malice used in trying to correct this boy—which was necessary to control the other students in this particular school. Apparently the teacher was trying to convince this lad that he must obey the teacher in the various classrooms to which he might retire to receive such instructions as the principal might think necessary for the boy's good.

The defendant was a big boy, 15 years of age, and weighing about 200 pounds. He had been given up as incorrigible at the Betsy Ross School and his own mother requested that he be transferred to Moseley.

The reasons for the transfer are set out in defendant's exhibit 3 of April 3, 1940, but this also was refused to be considered by the court in reaching its finding.

There are other citations of authorities that were passed upon by the courts in the various States regarding the rule that must be applied to a pupil who has been charged with acts of misconduct. Among these are *Sheehan v. Sturges,* 53 Conn. 481, 2 Atl. 841, cited upon this question, where the court approved the action of a teacher in whipping a student who had violated the reasonable rules of the school. The court there also approved of admitting in evidence past acts of misconduct in determining whether a teacher acted reasonably in administering punishment. Our attention is also called to the case of *Heritage v. Dodge,* 64 N. H. 297.

When we come to consider the facts as they appear in this case, and the question of the admissibility of evidence—which we have indicated should have been admitted to aid the court in determining the questions involved, rather than limiting the evidence to the happenings of March 24, 1938—we are of the opinion that the judgment should be reversed. In passing upon the questions involved, this court did not have the aid of a brief by the plaintiff.

For the reasons stated the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

DENIS E. SULLIVAN and BURKE, JJ., concur.