THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN BALL, Defendant-Appellant.

(No. 73-34;

Fifth District—October 29, 1973.

G. MORAN, P. J., dissenting.

144

Michael B. Constance, of Brady, Donovan & Hatch, of Belleville, for appellant.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant appeals his conviction in a bench trial of the crime of battery in violation of section 12—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 12—3). The penalty imposed was a fine of $100 and costs. The case presents the question of the proper test to be applied in determining whether a schoolteacher has exceeded the legally permissible limits in administering corporal punishment.

At the time of the incident in question the defendant was a schoolteacher, aged 54, with 23 years teaching experience, the last 7 as a sixth grade teacher in the Henry Robb School in Belleville, the site of the occurrence in question.

The prosecuting witness was a student of defendant, age 11. On the day in question the defendant's class was practicing unison exercises for an approaching school festival. The boy disrupted the practice by walking, facing in a direction opposite that of the rest of the class and doing "jumping jacks." He was directed by defendant to go to a bench alongside the schoolhouse and remain seated there until he was directed otherwise by defendant. Shortly thereafter the boy left the bench and commenced talking to a friend of his who had approached. The defendant thereupon decided that disciplinary action was necessary. He took the boy into the school and got another teacher as an observer. In the hallway of the school, outside the classroom of the observing teacher, the defendant had the boy bend down with his hands on his knees and he then struck him 10 times on the buttocks with a wooden paddle about 20 inches long, one-fourth inch thick and three inches wide. Following the paddling the defendant took the boy to the classroom and in a conversation explained why the punishment was administered and why it would help the boy. The defendant stated, and the teacher-observer confirmed, that he was not angry, had not lost his temper and remained calm and rational throughout. The boy admitted that he was wrong and deserving of punishment.

The paddling occurred at approximately 2:30 in the afternoon. When school dismissed at 3:15 the boy walked to his home and reported the paddling to his parents. His father took him to the police station and then to the home of their family doctor where they were directed to

the emergency room of a local hospital. There the boy was treated by a doctor who applied a surface anesthesia and gauze bandage. The condition as described by the doctor was that the boy had severe burntype bruises of both buttocks, the right side being worse than the left. The skin temperature was hot to the touch, there was marked discoloration and redness requiring treatment. There may have been minute abrasions in the bruised area but the main effect was one of swelling, redness, heat and a thickening of the area above the surface surrounding the skin. The redness and swelling disappeared in due course with no after effects, except that the mother testified that the boy had some lingering emotional problems stemming from the paddling. We note at this point that defendant has conceded that bodily injury was inflicted.

A written judgment order was entered in which the court merely found defendant guilty as charged. However, in his remarks delivered from the bench the court stated that a teacher is a substitute parent and "may administer just and reasonable punishment, switch or paddle accepted." The court further stated that there was no indication the defendant lost his temper and the discipline was tendered in an orderly manner. The court concluded that defendant administered punishment more severe even than a parent had the right to administer, and that the events and their results indicated that the punishment was more than a spanking, it was a beating. The court also stated that it was not his purpose to take the right to discipline away from the teacher but to insure the student that discipline will be "just and reasonable."

On appeal defendant contends that the People failed to prove an element of the crime of battery and that the trial judge applied the wrong test to the evidence to determine criminal liability.

■■ The requirements for an offense of battery in Illinois are set out in section 12—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 12—3):

> "A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual."

(We are not concerned here with the aspect of physical contact of an insulting or provoking nature.) Defendant argues in support of his first contention that there are three essential elements to commission of a battery as the statutory definition applies here, first, there must be bodily harm, second the actor must intentionally or knowingly commit the harm and, third, the act must be without legal justification. Defendant concedes that bodily harm was inflicted but contends that the evidence fails to show that he intentionally or knowingly inflicted the harm. We

must disagree. Although these elements of the crime of battery are concerned with the subjective state of mind of the defendant they nevertheless properly may be inferred by the objective evidence attending the event. We think that the objective evidence here is sufficient to permit the court to find the defendant to have been possessed of the necessary subjective elements to sustain a finding of guilty.

Defendant next argues that under an applicable statute and the governing case law he was acting within legally prescribed limits and the corporal punishment therefore was administered with legal justification and his conviction cannot stand. The concern of this argument is that in determining whether defendant's actions were "just and reasonable" the trial court applied an erroneous test to the evidence to determine criminal liability. With this we must agree.

Section 24—24 of the Illinois School Code of 1961 (Ill. Rev. Stat. 1971, ch. 122, par. 24—24) provides:

> "Teachers and other certificated educational employees shall maintain discipline in the schools. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians.

It is defendant's position that under the foregoing statute he was acting in the place of the boy's parents in administering the paddling and that under the rule established by the applicable Illinois cases the paddling he administered did not go beyond permissible limits. We are referred to three Illinois cases concerned with the administration of corporal punishment by schoolteachers (*Fox v. People* 1899, 84 Ill.App. 270; *Drake v. Thomas* 1941, 310 Ill.App. 57, 33 N.E.2d 889; and *City of Macomb v. Gould* 1969, 104 Ill.App.2d 361, 244 N.E.2d 634.) The rule of the *Fox* and *Drake* cases is concisely stated as the governing law in the *Gould* case as follows:

> "He (a teacher) may not wantonly or maliciously inflict corporal punishment and may be guilty of battery if he does so. Whether he has done so may be inferred from the unreasonableness of the method adopted or the force employed under the circumstances. This presents a question of fact requiring reference to the evidence."

It thus becomes apparent that when the trial court, in delivering his findings from the bench, stated that a teacher may administer "just and reasonable" punishment and that the purpose of his ruling was to insure

that student discipline will be "just and reasonable," he was applying criteria other than that adopted by the above cases. Those cases prohibit a teacher from wantonly or maliciously inflicting corporal punishment or from acting out of malice.

The People suggest in their brief that the rule of "reasonableness" be adopted and followed and they cite authorities to show that the "reasonable" rule is followed in a clear majority of States. However, we see no reason to abandon the established Illinois rule. We deem it sufficient to protect the teachers in the discharge of their statutory duty to maintain discipline and also sufficient to protect pupils from abuse by teachers overzealous in their belief that "to spare the rod is to spoil the child."

■■ In our view the trial court erred in considering whether the evidence showed the corporal punishment was "just and reasonable." Properly it should be determined whether the teacher was actuated by malice, or inflicted the punishment wantonly. For an error in judgment although the punishment is unnecessarily excessive, if it is not of a nature to cause lasting injury, and he acts in good faith, the teacher is not liable. *Fox v. People.*

■■ Accordingly we remand the case to the trial court for reconsideration of the evidence and a determination of guilt under the proper rule. This remand procedure is authorized by Supreme Court Rule 366(a) (5) (Ill. Rev. Stat. 1971, ch. 110A, par. 366(a) (5)) and was the type of order utilized in *Heuer v. Goldberg*, 106 Ill.App.2d 55, 245 N.E.2d 497.

Reversed and remanded with directions.

CREBS, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN dissenting:

In my opinion the trial court properly applied the standard of "reasonableness" to determine the defendant's criminal liability for battery. In holding otherwise, the majority grants teachers more power in disciplining school children than possessed by their parents. To the degree that the majority bases this result on the statutory right of teachers to maintain discipline in the relation of parents and guardians to the pupils, I believe that the majority opinion constitutes improper judicial legislation.

The facts show that the defendant, a 54 year old, 170 pound teacher, beat a 68 pound, 11 year old student with a wooden paddle. Nothing in the record indicates that the boy had ever been beaten before entering the defendant's sixth grade class. The defendant had beaten the complaining witness four or five times before this incident. The record indicates that about a week before this incident, defendant beat the boy

without determining who was guilty of an offense of "hollering out" in class.

Just before the beating in question, the student did "jumping jacks" while facing the wrong direction, then left a bench where defendant had directed him to sit. He left the bench to talk to a friend. While this behavior is mischievous, it is not mean. The punishment was grossly disproportionate to the nature of the offense. The doctor from the hospital emergency room testified that this was the most severe paddling he had observed in 25 years. The boy's parents testified that they found blood on the boy's underpants and that there was a red and oozing fluid that appeared to be a mixture of blood and water emanating from the injured area. Pictures introduced into evidence graphically illustrated the severity of the beating, and both doctors testified that the photographs did not show the full extent of the discoloration. The bruises did not clear up for several weeks. In my opinion, this beating was "without legal justification" within the meaning of the battery statute (Ill. Rev. Stat. 1971, ch. 38, par. 12—3), whether justification is determined by either a "reasonableness" or a "malice" standard.

More important than the facts of this case is the question of which standard to apply in determining whether a teacher's corporal punishment of a student constitutes battery. Two divergent standards have been applied in this country, which I shall refer to as the "reasonableness" and the "malice" tests.

The reasonableness test is clearly the rule in the majority of American courts. Its philosophical basis is that the right or privilege of a parent or teacher to discredit the child is grounded not in the adult's liberty of action, but in the child's welfare. Therefore, this discipline must not exceed what is reasonable and moderate under the circumstances, considering the age, sex, physical and mental condition of the child, the nature of his offense and his apparent motive, and whether the punishment is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm. If the punishment is unreasonable the adult is criminally liable.

The minority "malice" rule is that a parent or teacher in punishing a child acts in a judicial or quasi-judicial capacity and is not criminally liable for an assault because of an error in judgment or because the punishment was disproportionate to the offense, but is liable only if the punishment either results in permanent injury or was inflicted with malice, either express or implied. This view is grounded more in a desire to protect the adult from liability for otherwise criminal actions than in a desire to protect children from excessive punishment and in my opinion is so concerned with the adult's "right" to punish that it over-

looks the reason for the "right", which is the welfare of the child. This outmoded concept was criticized by the Supreme Court of Indiana in *Cooper v. McJunkin*, 4 Ind. 290, as long ago as 1853:

> "The public seem to cling to the despotism in the government of schools which has been discarded everywhere else.   *   *   * The husband can no longer moderately chastise his wife; nor *   *   * the master his servant or apprentice. Even the degrading cruelties of the naval service have been arrested. Why the person of the schoolboy  *   *   * should be less sacred in the eye of the law than that of the apprentice or the sailor, is not easily explained." 4 Ind. at 291-293.

The rationale underlying both tests was discussed extensively in the scholarly opinion of *People v. Curtiss*, 300 P. 801. The court there stated that under the malice test, the teacher is the sole arbiter of the right to punish as well as the degree of punishment to be administered, subject only to the limitation as to punishment maliciously inflicted or punishment which results in disfigurement or permanent injury. The court rejected the malice test, saying at page 803:

> "The second group of cases, and the one which, to our mind, expresses the more enlightened view—a view more consonant with modern ideas relating to the relationship between parents or those standing in their place and children—refuses to make the teacher the sole arbiter. The courts deciding these cases hold that both the reasonableness of, and the necessity for, the punishment is to be determined by a jury, under the circumstances of each case. This rule is expressed in Clasen v. Pruhs, 69 Neb. 278, 95 N.W. 640, 642, 5 Ann. Cas. 112, in the following language: 'A parent, teacher, or master is not liable, either civilly or criminally, for moderately correcting a child, pupil, or apprentice, but it is otherwise if the correction is immoderate and unreasonable. 1 Clark & Marshall, Law of Crimes, 133; 1 McClain's Crim. Law, § 242; 3 Greenleaf on Evidence, § 83; Wharton's Crim. Law (10th Ed.) § 631. In fact, this rule seems to be universally recognized by the courts of this country. If the authority to punish be limited by reason and moderation, who, then, on sound principles, should determine whether such authority has been used in excess of its proper limits—the parents administering the punishment, or the triers of fact in a court where complaint has been made?  *   *   *'."

Fortunately, most modern decisions (except the present one) have turned away from the "malice" test. According to Annot., "Criminal Liability for excessive or improper punishment inflicted on child by parent, teacher, or one in loco parentis," 89 A.L.R.2d 396, only two

American cases since 1905 have applied the "malice" test to teachers. Furthermore, even among the older cases applying the "malice" test almost all allow malice to be inferred, usually from excessive punishment. (*See, e.g., State v. Pendergrass* (1837), 19 N.C. 365; *Danenhoffer v. State* (1879), 69 Ind. 295; *Heritage v. Dodge* (1887), 64 N.H. 297; *Boyd v. State* (1889), 88 Ala. 169, 7 So. 268). This is also the rule in Illinois. The majority opinion apparently overlooked the second sentence of their quotation from *City of Macomb v. Gould* (1969), 104 Ill.App.2d 361, 244 N.E.2d 634, wherein it says that a teacher

> "* * * may not wantonly or maliciously inflict corporal punishment and may be guilty of battery if he does so. Whether he has done so may be inferred from the unreasonableness of the method adopted or the force employed under the circumstances." 104 Ill.App.2d 362.

Although the majority opinion sees "no reasons to abandon the established Illinois rule," analysis shows that the rule—if indeed it is the rule —has a very weak foundation. Its origin is *Fox v. People,* 84 Ill.App. 270, an 1899 case where the court quoted without comment from the 1883 American and English Encyclopaedia of Law, Vol. 21, p. 769, a formulation of the malice test and held it to be the applicable law. However, that page of that encyclopedia clearly showed that the malice test was a minority rule and the reasonableness test was the majority rule. While there is nothing inherently improper or wrong in following a minority rule, it seems incumbent to explain the reasons for doing so. In my opinion, the court in *Fox* arbitrarily chose to follow a minority rule without discussion or explanation. The only criminal case to cite *Fox* was *City of Macomb v. Gould, supra,* which I interpret as engrafting the reasonableness test onto "malice" terminology. The foundation of the majority opinion is very weak and in my opinion cannot withstand scrutiny. In light of this, it would appear incumbent upon the majority opinion to justify their retention of the malice rule. I would clarify any ambiguity left by the language of *Gould* by expressly adopting the better-reasoned reasonableness test.

The majority opinion infers that the defendant was legally justified in inflicting punishment which would otherwise be a battery upon a provision of the School Code of 1961 which provides in part:

> "Teachers * * * shall maintain discipline in the schools. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils." Ill. Rev. Stat. 1971, ch. 122, par. 24—24.

However, the majority opinion apparently overlooks the fact that under Illinois law not even a parent may punish a child unreasonably. A parent,

a step-parent, one standing in loco parentis or a school teacher are all held to the same standard of reasonableness (*People v. Parris* (5th Dist. 1971), 130 Ill.App.2d 933, 267 N.E.2d 39). As the court stated in affirming an aggravated battery conviction of one standing in loco parentis in *People v. Machroli* (1968), 100 Ill.App.2d 227 at 232, 241 N.E.2d 609 at 611-12:

> "Even if the defendant stood in loco parentis to Sharie Bianca the force he used in reprimanding the child was far beyond the acceptable standards of parental conduct. The beating applied to Sharie went far beyond reasonable force allowed under Illinois law."

Because the punishment in the present case was unreasonable, I feel that it constituted the criminal offense of battery. Had the punishment been reasonable it might have been legal, but I would still question its wisdom. Although beyond the scope of this opinion, the following sources cast light on the problem. In Aron and Katz, "Corporal Punishment in the Public Schools," 6 *Harvard Civil Rights—Civil Liberties Law Review* 583 (1971), the authors conclude at 584-585:

> "Corporal punishment in the public schools is ineffective and harmful. If mildly and irregularly applied, it is useless in controlling behavior. In order to prevent the recurrence of unwanted behavior, corporal punishment must either be applied continually, or its exemplary application must have a 'terrifying and traumatic' effect. Not surprisingly, the National Education Association has concluded that corporal punishment is ineffective in reducing behavioral problems. Furthermore, and [*sic*] English study found that a deterioration of behavior and an increase in delinquency accompany increased use of corporal punishment.
>
> Corporal punishment has further deleterious effects on children. Insofar as it relies on fear, it disrupts the learning process by repressing the natural tendency of children to explore. This fear may be channeled into aggression against the teacher, against the school, or against society. At the extreme, juvenile delinquency may result. Finally, and perhaps most seriously, the use of corporal punishment may inhibit the development of self-criticism and self-direction in the child. Corporal punishment may drive students to concentrate their energies on conflict with the teacher instead of encouraging them to adjust to their classroom situation.
>
> While theoretically corporal punishment need not be brutal, there is no assurance that it will be inflicted moderately or responsibly. In the heat of anger, especially if provoked by personal abuse, some teachers are likely to exceed legal bounds. Moreover,

if limited corporal punishment were permited, controls would be unlikely to prevent the 'really unmistakable kind of satisfaction which some teachers feel in applying the rattan.' A total ban of this punishment would provide far more effective control.

Finally, corporal punishment undermines human dignity. Students are placed at the mercy of teachers who have the power to beat them without explanation or justification. In an institution which purports to inculcate the value of reason in human affairs and the worth of each individual in society, it is antithetical to educate by brutality and unreason."

*See also* Nash, "Corporal Punishment in an Age of Violence," 13 *Educational Theory* 296 (1963); Boston Legal Assistance Project, *Negative Aspects of Corporal Punishment* (1970); and Silverman, "Discipline: Its Psychological and Educational Aspects," 42 *Mental Hygiene* 277 (1958).

I would affirm the judgment of the trial court.