GREGORY GORDON *et al.*, Plaintiffs-Appellants, *v.* OAK PARK SCHOOL DISTRICT NO. 97, a/k/a SCHOOL DISTRICT NO. 97, Defendant-Appellee.

(No. 59409; ▮▮▮▮▮▮▮)

First District (3rd Division)—November 7, 1974.

Adam Bourgeois, of Chicago, for appellants.

Maurice J. Garvey and David L. Schiavone, both of Chicago (Wildman, Harrold, Allen & Dixon, of counsel), for appellee.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court of Cook County granting summary judgment in favor of defendant. From September 1961 through June 1964, Gregory, David, and Tobey Lynn Gordon were students at Emerson School, a grammar school in Oak Park School District No. 97. In 1966, the children, then minors, by their mother and next friend, filed suit against the School District, claiming that defendant, through its teachers, board members and officials, had maliciously and intentionally abused, attacked, hit, embarrassed, intimidated and harassed them. Eventually, in 1972, after their pleadings had been twice stricken, plaintiffs were given leave to file an amended complaint. In the amended complaint, plaintiffs, in some 16 sub-paragraphs, recited instances of alleged wilful and wanton conduct. Defendant moved to strike and dismiss the amended complaint, or in the alternative, for summary judgment. After considering documents filed by both sides and hearing oral argument, the trial court granted defendant's motion for summary judgment, ruling that no genuine issue of fact on the question of malice or injury existed. We will attempt to summarize the allegations of the amended complaint.

As to Tobey Lynn Gordon, the complaint charged that her teacher broke her crayons, marked her paper with "x's," chased her around the classroom, refused her admittance into the reading group, placed her in an isolated section of the classroom and made her stand in the closet. Further, Tobey claimed that, on one occasion, three teachers taunted her and David with disparaging remarks concerning their personality, intelligence and ethnic background. The complaint further alleged that

Tobey's fourth grade teacher struck Tobey on the head with her fist and once kicked and bruised plaintiff's ankle.

As to David Gordon, the complaint charged that a teacher pulled his hair, referred to him as dumb or stupid, imitated his lisp and made him bite his fingernails in front of the class. Another teacher was alleged to have made disparaging remarks to the class concerning David's conference with the school psychologist.

Plaintiffs maintained that the malicious attitude exhibited by their teachers was actuated, in part, by anti-Semitism. For instance, David claimed that his music teacher compelled him to sing Christmas carols despite the fact that he was Jewish, and that he was excused only after a conference with the school principal.

As to Gregory Gordon, the complaint charged that, by virtue of malice, he was transferred from a high reading group to a lower level group. The complaint further charged that one teacher grabbed Gordon by the nape of the neck, and on occasion, such physical contact resulted in a scratch. Additionally, Gregory charged that his teachers made disparaging remarks about him, refused to give him assignments, discharged him from the safety patrol, forced him to wipe up the floor on his hands and knees and did not allow him to play in the school band on graduation day.

The amended complaint concluded with a prayer that as a result of the alleged incidents, the plaintiffs' nervous systems and psyches had been permanently impaired and irretrievably damaged, that their learning abilities had been retarded, and that their earning capacities had been decreased.

Accompanying defendant's motion for summary judgment were supporting excerpts of plaintiffs' discovery depositions. After the judge had heard oral argument on defendant's motion and had taken the matter under advisement, plaintiffs filed a document entitled as an answer to defendant's alternative motion for summary judgment and plaintiffs' motion for a finding of guilty against defendant. Attached to this document were certain school records of defendant pertaining to plaintiffs plus a counter-affidavit made by plaintiffs' mother. Thereafter, the trial court granted defendant's motion for summary judgment. Before so ruling, the trial judge had insisted that, in fairness to plaintiffs, defendant file for the court's consideration the entire discovery depositions of plaintiffs rather than selected excerpts. In granting defendant's motion for summary judgment, the trial court ruled that the allegations of the complaint, when considered in light of the documents in the record, failed to establish any conduct on the part of defendant's personnel which could be deemed wilful or malicious.

■■ A teacher, standing *in loco parentis,* has the right to inflict corporal

punishment so long as such action is reasonable under the circumstances. (*People v. Ball* (1974), 58 Ill.2d 36.) Furthermore, the use of corporal punishment by a teacher will not give rise to civil liability unless the punishment was actuated by malice or inflicted in a wilful and wanton manner. See *Drake v. Thomas* (1941), 310 Ill.App. 57, 33 N.E.2d 889.

This court has also recognized that within the broad delegation of parental authority, a teacher has the right to verbally chastise a pupil. (*Wexell v. Scott* (1971), 2 Ill.App.3d 646, 276 N.E.2d 735.) In *Wexell*, this court held that plaintiff failed to state a cause of action when he alleged that his teacher intentionally humiliated, degraded and shamed him with disparaging remarks. Relying on the provisions of the Local Government Tort Immunity Act (Ill. Rev. Stat. 1965, ch. 85, pars. 1—202, 1—206, 1—207), the court held that absent allegations and proof of wantonness or malice, neither the teacher nor the School District could be held liable.

■■ Under the Tort Immunity Act, a school district can be held liable for the wanton or malicious acts of its employees. However, under the terms of the Act, absent proof of malice or wantonness, liability is absolutely precluded, and plaintiffs in their brief so concede.

On appeal, the present plaintiffs contend that the entry of summary judgment was improper inasmuch as, on the material presented, reasonable persons could come to different conclusions as to whether malice or injury had been shown. Plaintiffs maintain that a genuine issue of fact did exist, and that they were entitled to a trial. We have held that the Local Government Tort Immunity Act is applicable. Therefore, plaintiffs were required to create an issue of fact that the employees of defendant, in their relations with the plaintiffs, were actuated by malice or were wilful and wanton. The trial court found that plaintiffs failed to create an issue of fact as to malice or injury. After a thorough examination of the record, we are bound to agree.

■■ The purpose of summary judgment is not to try facts, but to determine whether a genuine issue exists as to any material fact which would require a jury trial. (*Fountaine v. Hadlock* (1971), 132 Ill.App.2d 343, 270 N.E.2d 222.) Where the pleadings, depositions and affidavits on file show that there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law, it is not only proper, but it is the duty of the trial court to enter summary judgment. (*Decatur Construction, Inc. v. Central Illinois Public Service Co.* (1974), 16 Ill.App.3d 1056, 307 N.E.2d 431; *Kirby v. General Motors Corp.* (1973), 10 Ill.App.3d 92, 293 N.E.2d 345.) When more than one inference could be drawn from undisputed facts, a triable issue exists and summary judgment may not properly be granted. (*Lumbermens Mutual Casualty Co.*

*v. Poths* (1968), 104 Ill.App.2d 80, 243 N.E.2d 40.) However, where undisputed facts give rise to a single inference, summary judgment should be entered. (*Brehm v. Dobson* (1973), 15 Ill.App.3d 285, 304 N.E.2d 149.) On defendant's motion for summary judgment plaintiffs were obligated to set forth facts that would satisfy their burden of showing malice. If such facts were not presented, summary judgment was properly entered. *Snead v. Forbes, Inc.* (1971), 2 Ill.App.3d 22, 275 N.E.2d 746.

■■ An act is wilful and wanton if it is committed intentionally or under circumstances exhibiting a reckless disregard for the safety of others, such as failure, after a knowledge of impending danger, to exercise ordinary care to prevent injury, or failure to discover a danger through recklessness or carelessness. (*Hocking v. Rehnquist* (1969), 44 Ill.2d 196, 254 N.E.2d 515; *Breslin v. Bates* (1973), 14 Ill.App.3d 941, 303 N.E.2d 807.) The term malicious refers to the doing of a wrongful act intentionally and without just cause. *Meadowmoor Dairies, Inc. v. Milk Wagon Drivers' Union* (1939), 371 Ill. 377, 21 N.E.2d 308.

■■ In the present case, plaintiffs offered no facts which could be construed as supporting their allegations of wilful and wanton misconduct. In light of the admissions made by plaintiffs during their discovery depositions, in view of their mother's deposition and counteraffidavit, and the information contained in the school records offered by plaintiffs themselves, the trial court was correct in finding no genuine issue of fact on the issue of malice. It is difficult to elaborate on the circumstances surrounding each and every allegation of wilful and wanton conduct. Some examples are illustrative.

In her deposition testimony, Tobey admitted that the disciplinary measures employed by her teachers were precipitated by her own misbehavior. The instance described in the complaint as a teacher striking her on the head with a fist was characterized as a rap on the head to get Tobey's attention. Tobey's foot was kicked after she had placed it out in the aisle.

David's deposition testimony revealed that his teacher's disparaging remarks came at a time when he was failing nearly every subject. Corporal punishment was employed only when he failed to pay attention, talked in class or performed poorly on an assignment. David was excused from the Christmas program as soon as his mother mentioned it to the principal, and David was permitted, along with the older boys, to serve as an usher.

During his deposition, Gregory conceded that he never was "forced to wipe up water from the floor on his hands and knees" as charged in the complaint. When his teacher told him to wipe up water he had spilled, Gregory refused and left the school without permission. The complaint

charged that Gregory's teacher refused to give him assignments. His testimony revealed that this occurred only after Gregory had failed to hand in 16 previous assignments. Gregory did not play in the school band on graduation day because the school administration believed drums would be too loud in a crowded auditorium. Gregory also conceded that he was grabbed by the nape of the neck only when he talked or otherwise disturbed the class.

The school records of Tobey and David, offered by plaintiffs in opposition to defendant's motion, contained nothing which could be deemed as indicating malice. On the contrary, the teachers' notations showed a concern for David's health problem and an attitude of encouragement. The school physician found Tobey immature, yet the remarks of her teachers reflected concern and an effort to help her "make the best use of her potential."

The counteraffidavit and deposition testimony of plaintiffs' mother offered no factual support for plaintiffs' charge of malice or their claim of injury. The testimony, replete with conclusions, hearsay and other incompetent statements, including accusations against other schools, did not create an issue of fact that the conduct of defendant's personnel was malicious. The mother admitted that her children had never received medical or psychological treatment as a result of their experiences at Emerson School. In fact, she stated that each of the plaintiffs enjoyed academic success at the high school and college level. Nor did the mother's testimony support the complaint's allegation that the plaintiffs' nervous systems and psyches had been permanently impaired and damaged. The mother testified, "My children are not now nor ever have been maladjusted."

■■ Summary judgment is available in all appropriate cases in Illinois, including those in which good faith, purpose, malice, reasonableness, or other states of mind are in issue. (*Brisken v. Brisken Manufacturing Co.* (1972), 6 Ill.App.3d 740, 286 N.E.2d 571; *Snead v. Forbes, Inc.* (1971), 2 Ill.App.3d 22, 275 N.E.2d 746.) Having considered the record, we find no facts which in any way tend to support plaintiffs' allegations of malice and injury on the part of defendant personnel. The trial court correctly found that there was no genuine issue of fact.

Plaintiffs argue, however, that summary judgment was improper because, if a trial had been held, they would have produced witnesses whose testimony would have substantiated "most, if not all" of their allegations. This contention is without merit. On defendant's motion for summary judgment, plaintiffs were obligated to bring forth all facts and evidence that they believed would satisfy their burden of proving wilful

and wanton conduct. (*Snead v. Forbes, Inc.*) Having failed to present these facts by way of counteraffidavit during the summary judgment proceedings, plaintiffs cannot now rely on such possible witnesses to substantiate their claims.

For the reasons stated, the order of the circuit court of Cook County granting summary judgment to defendant is hereby affirmed.

Order affirmed.

DEMPSEY and MEJDA, JJ., concur.