804

NATIONAL LOSS CONTROL SERVICE CORPORATION, Plaintiff and Counterdefendant-Appellee, *v.* NORMAN R. DOTTI, *et al.*, Defendants and Counterplaintiffs-Appellants (Gary N. Crawford *et al.*, Counterdefendants-Appellees).

First District (1st Division) No. 83—0483

Opinion filed July 9, 1984.—Rehearing denied August 27, 1984.

Robert K. Blain, of Altheimer & Gray, of Chicago, for appellants.

Richard C. Gering, of Arnstein, Gluck, Lehr, Barron & Milligan, of Chicago, for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Counterplaintiffs, Norman R. Dotti and Ostergaard Associates, appeal from the entry of summary judgment on their counterclaim against counterdefendants, National Loss Control Service Corporation and six former and present employees of that company and its parent, Kemper Company. On appeal, counterplaintiffs (hereinafter referred to as defendants) contend that numerous issues of material fact preclude entry of summary judgment on their four-count countercomplaint against counterdefendants (hereinafter referred to as plaintiffs) alleging tortious interference with economic advantage, slander, intentional infliction of emotional distress and malicious prosecution.

Defendant Norman R. Dotti was hired by National Loss Control Service Corporation in 1971. National Loss is in the business of consulting to commercial, governmental and industrial entities regarding fire prevention, noise control and other environmental problems. At his suggestion National Loss developed a separate group to handle the industrial noise and vibration control aspects of its work. Dotti was named the group's first manager in 1974. In December 1978, his title was changed to principal engineering consultant.

In the winter of 1978 Dotti became dissatisfied with his employment at National Loss and decided to work for plaintiff Ostergaard Associates, a small firm in Cadwell, New Jersey, which also did noise and vibration consulting. Dotti tendered his resignation to National Loss on January 30, 1979. He advised National Loss that he would continue to work for them through the end of February 1979. On the afternoon of February 15 he was contacted by a member of the personnel department, who asked him to come in for an exit interview. When Dotti arrived for the interview he was escorted to a large conference room. There he was confronted by Kemper's chief of security, Vincent R. Inserra, an attorney for Kemper, Wayne Koprowsky, and two vice-presidents of National Loss, Gary N. Crawford and Daniel

Benevich. They interrogated Dotti extensively concerning his activities over the past weeks. They accused Dotti of stealing certain computer tapes. Dotti denied their accusations, yet they persisted in questioning him and asked if Dotti would allow someone to go home with him to search his house. The meeting lasted two hours. At its conclusion they informed Dotti that his employment was terminated effective the next day. Dotti was escorted to his car and driven home. The next day he was allowed to remove his personal belongings from his desk under the supervision of Crawford.

On June 29, 1979, Dotti and Ostergaard were served with a complaint and a motion for preliminary injunction in this cause. National Loss sought to enjoin defendants from using computer tapes, reports of testing and teaching materials which they alleged Dotti had taken from National Loss prior to his departure.

Hearings on the motion for a preliminary injunction were held on 15 days between September 1979 and August 1980. In November 1979, Dotti and Ostergaard filed their counterclaim. The counterclaim alleged tortious interference with prospective economic advantage, slander and intentional infliction of emotional distress. On August 27, 1980, at the close of National Loss' case, the court denied their motion for a preliminary injunction. The trial of National Loss' complaint commenced on October 13, 1981. National Loss rested on the evidence presented during the preliminary injunction hearing. Dotti and Ostergaard presented their defense, and National Loss presented testimony in rebuttal. On February 4, 1982, the trial court entered judgment in favor of Dotti and Ostergaard on the complaint.

The trial court found that through courses he took and his own efforts Dotti had become an expert in the area of industrial noise and vibration during the course of his employ at National Loss. Dotti played a role in convincing National Loss to acquire additional computer hardware and to purchase data from outside noise researchers to better serve their clients. The court found that on the morning of February 15, 1979, Dotti was using the National Loss computer to test the speed and storage capacity of a Tektran intelligence and storage and retrieval device. Crawford thought that Dotti was using the device to transfer confidential material stored in the National Loss computer to his own tapes for use at his next job. The court held, however, that Dotti has unequivocally denied all charges of computer thievery and no further significant proof thereof was presented. The court also found that teaching notes and instructional visual aid materials which Dotti had collected over the years, kept in his own home and used for lectures he gave, contained merely information of gen-

eral knowledge within the industry. The court held that National Loss had failed to prove a conspiracy between Dotti and Ostergaard or that Dotti had stolen anything from National Loss.

On March 16, 1982, defendants amended their counterclaim to include a count charging malicious prosecution. On June 24, 1982, plaintiffs filed a motion for summary judgment. The motion was fully briefed by the parties. On February 3, 1983, the court entered summary judgment against defendants on their claim of malicious prosecution. On February 16, 1983, the court entered summary judgment against defendants on the remaining counts of their counterclaim. Defendants appeal.

■ Initially, defendants contend that the trial court misapplied the standard for determining if a movant is entitled to summary judgment. This error is evident, they argue, from a portion of the trial court's opinion which reads,

"It must be remembered that a party is not required to prove his case at the summary judgment state; he must merely present a factual basis which arguably would entitle him to judgment in his favor. [Citation.] Counterdefendant has more than adequately met his burden in this respect."

They argue that this shows the court's confusion as to which party bears the very light burden sufficient to resist a motion for summary judgment. Plaintiffs argue that the challenged language could also reflect the court's finding that plaintiffs had met their burden in demonstrating that defendants had failed to show the factual basis necessary to withstand a motion for summary judgment. We agree. The quoted language is too ambiguous in and of itself to indicate that the trial court misapplied the standards for summary judgment.

Plaintiffs also point out that Dotti and Ostergaard did not file any affidavits to support the allegations of their counterclaim nor have they argued that they were unable to obtain any necessary affidavits. Their argument before the trial court and this court relies instead upon evidence adduced at the trial on National Loss' complaint.

A trial court may enter summary judgment only when, after examining all the pleadings, depositions and affidavits, it concludes that no genuine issue of material fact exists between the parties and summary judgment may be entered as a matter of law. (*Marciniak v. O'Connor* (1981), 102 Ill. App. 3d 381, 430 N.E.2d 536; Ill. Rev. Stat. 1979, ch. 110, par. 57.) All inferences to be drawn from the evidence must be made in a light most favorable to the nonmoving party. (*Rubin v. City National Bank & Trust Co.* (1980), 81 Ill. App. 3d 1020, 402 N.E.2d 281.) While the nonmoving party is not required to prove

his case at this preliminary stage, he is required to present some factual basis which would arguably entitle him to a judgment in his favor. (*Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80.) With these principles in mind we will examine the four counts of defendants' counterclaim.

■ Count I of the counterclaim alleged tortious interference with prospective economic advantage arising out of a business relationship. In *Thorne v. Elmore* (1979), 79 Ill. App. 3d 333, 345, 398 N.E.2d 837, 847, the court outlined the elements of this tort. A plaintiff must prove that (1) the plaintiff had a reasonable expectancy of entering into a business relationship; (2) the defendant knew of the expectancy; (3) the defendant intentionally interfered, thus preventing the realization of the expectancy in the form of a valid business relationship; and (4) the defendant's interference damaged the plaintiff.

Defendants argue that the tortious interference occurred in destroying the good working relationship between Dotti and John Deere & Co., in preventing the publication of a scientific paper written by Dotti and in dissuading various potential customers of Ostergaard Associates from doing business with Dotti. They assert that while at National Loss, Dotti had an excellent working relationship with officers of Deere and had performed several large projects for them. Defendant Russell Hannula's deposition and testimony reveal, they contend, that several days after Dotti was fired Hannula met with representatives of Deere, showed them where in Dotti's resume he had taken credit for work performed for Deere by other National Loss employees, told them of errors Dotti had made in certain projects and made numerous other negative comments about Dotti. Following that meeting, a contract between Deere and Ostergaard was terminated, and there has been no further contact between them. Defendants argue that there is a strong inference that Hannula's contract with John Deere was made in an effort to harm Dotti and did, in fact, cause harm.

Plaintiffs describe a different factual situation. First, they point out that the evidence shows that the above-mentioned contract between Deere and Ostergaard was awarded after the meeting of Hannula and the Deere representatives, and that the contract was terminated several months later because Deere had "changed their priorities." Plaintiffs argue that the meeting was held to discuss ongoing projects National Loss was performing for Deere and the arrangements for the meeting had been made by Dotti before he left National Loss. Plaintiffs assert that Dotti admitted that he went to Deere a few days after he was fired in an attempt to induce Deere to

transfer remaining work on the projects to Ostergaard. Plaintiffs claim that Hannula justifiably intended to advance National Loss' business interests by allaying any concern that Dotti's departure might diminish National Loss' capabilities to provide noise control services and to defend against Dotti's own assault. (See *Candalaus Chicago, Inc. v. Evans Mill Supply Co.* (1977), 51 Ill. App. 3d 38, 366 N.E.2d 319.) They assert that an issue of intent may be disposed of by summary judgment (*Gordon v. Oak Park School District No. 97* (1974), 24 Ill. App. 3d 131, 320 N.E.2d 389), and that defendants have not presented any evidence that Hannula's discussions with Deere were motivated solely by an intent to harm them.

With respect to the publication of Dotti's scientific paper, Dotti contends that while he was employed at National Loss he was authorized by his supervisor, plaintiff Crawford, to write a paper on a noise testing device. The paper was essentially finished before Dotti left National Loss and was presented at a convention of the American Foundrymen's Society in the spring of 1979. The paper was well received and was scheduled to be published in the society's journal when, at the request of Crawford, the society decided not to publish it. Crawford testified that he asked the society not to publish the paper and threatened to make them part of the instant lawsuit if they did because the paper contained information about National Loss clients which was held confidential by written contracts with those clients. Plaintiffs contend that their action in contacting the society was necessary to protect National Loss' business interests. Dotti admitted that data charts in the paper did contain confidential information but contends that the client affected has not complained about the inclusion of the data.

Defendants also contend that plaintiffs discussed Dotti with other potential clients of Ostergaard. Plaintiffs contend that testimony in the record relating to these discussions indicates that these discussions were for valid business reasons and the only mention of Dotti related to the fact that he had left the company.

Upon review of the arguments of counsel we cannot conclude that the right of plaintiffs to summary judgment on the issue of tortious interference with prospective economic advantage is free from doubt. (*Johnson v. North Bank* (1981), 99 Ill. App. 3d 320, 426 N.E.2d 4.) Dotti and Ostergaard are not required to prove their case at this stage. We find, however, that they have presented some factual basis which would arguably entitle them to judgment in their favor (*Chisolm v. Stephens* (1977), 47 Ill. App. 3d 131, 320 N.E.2d 389). Therefore, it was error to grant summary judgment on this count.

■ Dotti next contends that the trial court erred in entering summary judgment on count II of the counterclaim which alleged slander. The slanderous statements involve comments made by Hannula to Deere concerning errors in the accomplishments claimed by Dotti on his resume and also errors in work Dotti performed for Deere. Dotti also claimed that plaintiff and nonplaintiff employees of National Loss slanderously stated that Dotti had taken computer tapes and engineering files from National Loss.

Plaintiffs argue that Dotti has no cause of action for the alleged slanderous statements because the statements fall into the following categories: statements whose truth has been admitted by Dotti; statements which reflect merely a difference of professional opinion between Dotti and the speaker; statements which are nonactionable under a qualified privilege; statements which even if false are not reasonably susceptible to a defamatory meaning; and statements which were not alleged in the second amended counterclaim, and, therefore, are not properly before this court.

We have reviewed the arguments of counsel and the record citations offered in support of these arguments. We find that the briefs and record are replete with factual disputes concerning what statements were made, the truth of those statements and whether the statements are privileged or otherwise nonactionable. In view of these issues of material fact, it cannot be concluded that plaintiffs are entitled to judgment as a matter of law. Accordingly, the trial court erred in entering summary judgment on this count.

■ Defendants next contend that the trial court erred in granting summary judgment on their action for intentional infliction of emotional distress. Defendants allege that Dotti suffered severe emotional distress as a result of the two-hour interview in which Dotti was accused of stealing computer tapes, plaintiffs' activities in slandering his reputation and plaintiffs' actions in preventing the publication of his scientific paper. Defendants also allege that Dotti suffered as a result of the protracted course of plaintiffs' case against him which lasted four years before the trial court entered judgment in defendants' favor. As a result of plaintiffs' actions Dotti claimed that he has suffered nervousness, sleeplessness, fear of losing his job, cramps in his arms and legs, loss of appetite and periods of depression. Defendants argue that a jury rather than a judge should listen to Dotti's testimony and decide whether he suffered severe emotional distress.

Plaintiffs contend that Dotti's deposition and testimony reveal that the conduct of plaintiffs at the meeting does not rise to the level

of extreme and outrageous conduct necessary to sustain an action for intentional infliction of emotional distress. They point out that it is undisputed that on February 15, 1979, Dotti was copying files and computer programs from National Loss' computer. Plaintiffs also argue that it is doubtful that under Illinois law a defendant may rely upon the wrongful filing of a civil action as a basis for an emotional distress claim (see *Lyddon v. Shaw* (1978), 56 Ill. App. 3d 815, 372 N.E.2d 685; *Pantone v. Demos* (1978), 59 Ill. App. 3d 328, 375 N.E.2d 480). Further, plaintiffs contend that the symptoms of emotional distress claimed by Dotti are inadequate grounds for recovery.

We are not persuaded that plaintiffs' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90, 360 N.E.2d 765, 767.) The trial court was correct in determining that plaintiffs were entitled to summary judgment on this count.

Lastly, defendants contend that the trial court erred in granting summary judgment on the claim of malicious prosecution. Plaintiffs argue that defendants have failed to present any evidence that National Loss' suit was instituted maliciously and without probable cause. Such a showing is required for an action of malicious prosecution. (*Stopka v. Lesser* (1980), 82 Ill. App. 3d 323, 402 N.E.2d 781.) The trial court in granting summary judgment on this count stated: "It is clear to the court that the original action, even though unsuccessful from the [plaintiffs'] point of view, was well-grounded and certainly not undertaken in the evil spirit required in an action for malicious prosecution." Defendants have failed to present any evidence to the contrary. Although defendants succeeded in the original action, that fact is not sufficient to show that the original proceeding was undertaken without probable cause. The comments of the trial court, who heard all the testimony on the original case, are highly persuasive and are amply supported by the record. The trial court was correct in entering summary judgment on this count.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part and remanded for further proceedings consistent with this order.

Affirmed in part, reversed in part, and remanded.

BUCKLEY, P.J., and McGLOON, J., concur.